**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD LAWRENCE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NEOGEN CORPORATION, JOHN E. ADENT, JAMES C. BOREL, WILLIAM T. BOEHM, RONALD D. GREEN, RALPH A. RODRIGUEZ, JAMES P. TOBIN, DARCI L. VETTER, and CATHERINE WOTEKI,<br><br>　　　　　　Defendants. | Case No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Richard Lawrence ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.　　This is a stockholder action brought by Plaintiff against Neogen Corporation ("Neogen" or the "Company") and the members of Neogen's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to combine 3M Company's ("3M") food safety business (the "Food Safety Business") with Neogen (the "Proposed Transaction").

2.      On December 13, 2021, Neogen and 3M entered into definitive agreements pursuant to which Neogen and 3M agreed to combine 3M's Food Safety Business with Neogen in a "Reverse Morris Trust" transaction.  Specifically, Neogen entered into: (i) a Separation and Distribution Agreement with 3M and Garden SpinCo Corporation ("Garden SpinCo"), (ii) an Agreement and Plan of Merger with 3M, Garden SpinCo and Nova RMT Sub, Inc. ("Merger Sub"), and (iii) an Asset Purchase Agreement with Neogen.  Under the terms of the agreements, 3M will separate its Food Safety Business and simultaneously combine it with Neogen, with existing Neogen shareholders continuing to own approximately 49.9% of the combined company, and 3M shareholders owning approximately 50.1% of the combined company.  In connection with the Proposed Transaction, 3M will also receive consideration valued at approximately $1 billion.

2.      On July 18, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Neogen stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Company insiders.

3.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Neogen stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

4.      The special meeting for Neogen stockholders to vote on the Proposed Transaction is currently scheduled for August 17, 2022.  It is imperative that such Exchange Act violations

are promptly cured to enable Plaintiff and Neogen's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Neogen's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Neogen common stock.

9.      Defendant Neogen is a Michigan corporation, with its principal executive offices located at 620 Lesher Place, Lansing, Michigan 48912.  Neogen's shares trade on the Nasdaq Global Select Market under the ticker symbol "NEOG."

10.     Defendant John E. Adent has been Neogen's Chief Executive Officer and President and a director of the Company at all relevant times.

11.     Defendant James C. Borel has been Chair of the Board and a director of the Company at all relevant times.

12.     Defendant William T. Boehm has been a director of the Company at all relevant times.

13.     Defendant Ronald D. Green has been a director of the Company at all relevant times.

14.     Defendant Ralph A. Rodriguez has been a director of the Company at all relevant times.

15.     Defendant James P. Tobin has been a director of the Company at all relevant times.

16.     Defendant Darci L. Vetter has been a director of the Company at all relevant times.

17.     Defendant Catherine Woteki has been a director of the Company at all relevant times.

18.     Defendants identified in paragraphs 10-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19.     Founded in 1981, Neogen together with its subsidiaries, develops, manufactures, and markets various products for food and animal safety worldwide.  It operates through two segments, Food Safety and Animal Safety.  Neogen's Food Safety segment markets dehydrated culture media and diagnostic test kits to detect foodborne bacteria, natural toxins, food allergens, drug residues, plant diseases, and sanitation concerns.  The Company's Animal Safety segment is

a leader in the development of genomic solutions along with the manufacturing and distribution of a variety of animal healthcare products, including diagnostics, pharmaceuticals, veterinary instruments, wound care, and disinfectants, as well as rodent and insect control solutions.

**The Proposed Transaction**

20.    On December 14, 2021, Neogen announced that it had entered into the Proposed Transaction, stating, in relevant part:

> LANSING, Mich., and ST. PAUL, Minn., December 14, 2021 – Neogen Corporation (NASDAQ: NEOG) and 3M (NYSE: MMM) announced today that they have entered into a definitive agreement pursuant to which 3M will separate its Food Safety business and simultaneously combine it with Neogen in a transaction that is intended to be tax-efficient to 3M and its shareholders for U.S. federal income tax purposes. The combination will create an innovative leader in the food safety sector with a comprehensive product range and a strategic focus on the category's long-term growth opportunities.
>
> The transaction implies an enterprise value for 3M's Food Safety business of approximately $5.3 billion, including $1 billion in new debt to be incurred by 3M's Food Safety business. This represents an implied multiple of approximately 32x and 27x CY 2022E Adjusted EBITDA pre and post run-rate synergies respectively, based on Neogen's closing price as of December 13, 2021. 3M's Food Safety business will fund to 3M consideration valued at approximately $1 billion, subject to closing and other adjustments. The combined company is expected to have an enterprise value of approximately $9.3 billion, based on Neogen's closing share price as of December 13, 2021. Under the terms of the definitive agreements, which involve a tax-free "Reverse Morris Trust" structure, existing Neogen shareholders will continue to own approximately 49.9% of the combined company, and 3M shareholders will receive approximately 50.1% of the combined company. The Boards of Directors of both Neogen and 3M have unanimously approved the transaction.
>
> "This combination will enhance Neogen's position in this new era of food security, equipping us with an expanded product line that enables us to capitalize on our growing footprint, reaching more customers, more often, while continuing our track record of strong and consistent growth," said John Adent, Neogen's President and Chief Executive Officer. "The heightened global focus on food security, sustainability and supply chain solutions around the world presents exciting opportunities for Neogen to be positioned as an innovative leader at the forefront of the growth and digitization of the industry. We're excited to welcome 3M's Food Safety employees to the Neogen team, and we're looking forward to demonstrating

the immense benefits of this combination to our customers, employees and shareholders."

"Neogen and 3M share a deep commitment to quality, innovation and customer satisfaction and long histories of industry leadership. By combining our Food Safety business with Neogen, we will create an organization well positioned to capture long-term profitable growth. This transaction further evolves our strategy, focuses our health care business and benefits our stakeholders, as we actively manage our portfolio to drive growth and deliver shareholder value*,"* said Mike Roman, 3M Chairman and Chief Executive Officer.

**An Innovative Global Leader in Food Safety: Key Strategic Benefits**

The combination is expected to generate significant long-term value for shareholders of the combined company, as well as customers and employees by:

- **Creating a leading innovator in an industry benefiting from growing demand:** Neogen's pure play food security business, combined with the long-term tailwinds of increased global focus on sustainability, food safety and supply chain solutions, mean Neogen is the ideal home for 3M's Food Safety business. A combination will create a global innovator in food safety with the geographic footprint, product range and innovation capabilities to further capitalize on attractive and enduring growth trends.
- **Expanding food safety product offerings to better serve customers:** The company will have a significantly expanded product offering in food safety, particularly in indicator testing and pathogen detection areas, which complement Neogen's existing microbiology lines. Neogen will also be able to offer 3M food safety customers its genomics services, which deliver innovative DNA testing – a new offering to 3M food safety customers. This expanded product range, along with Neogen's complementary animal safety business, increases the solutions with which Neogen helps customers protect the world's food supply from the farm gate to the dinner plate.
- **Generating global growth opportunities:** The combined company creates an opportunity to optimize Neogen and 3M Food Safety's high-growth capabilities to add value for customers through a compelling product offering. Beyond the U.S. and Europe, heightened interest in developing nations in improving food safety presents significant growth potential for the combined company. The combination will also provide investment flexibility to pursue international expansion.
- **Creating a compelling offering through enhanced R&D capabilities, innovation and analytics:** Neogen is looking to the future of the industry, and with 3M's Food Safety business, will possess the breadth and digital capabilities to lead the digitization of the food security industry. The complementary product offerings combined with Neogen's data-driven analytics approach will create a compelling solution as customers seek

innovative partners to increase efficiency and enhance food safety protocols.

- **Enhancing revenue, margin and earnings stability:** The combined company is expected to have an improved financial profile, which is expected to further enhance Neogen's already consistently high-performing revenue stream with improved EBITDA margins by increasing exposure to highly profitable food safety categories and providing substantial run-rate growth and cost synergies of approximately $30 million in EBITDA contribution. These synergies are expected to be achieved by the end of year three following the close of transaction through efficiencies in product innovation, sales, marketing, distribution and production. The combination will boost Neogen's food safety segment to approximately 70% of total revenue post-transaction, with total projected pro forma revenues of approximately $1 billion expected in the first full year post closing. Pro forma EBITDA is expected to be approximately $300 million with a higher overall EBITDA margin profile of approximately 30% expected in the first full year post closing.

**Transaction Details**

The transaction involves a tax-free "Reverse Morris Trust" transaction structure, where 3M's Food Safety business will be spun-off or split-off to 3M shareholders and simultaneously merged with a wholly owned subsidiary of Neogen. The transaction is intended to be tax-efficient to 3M and 3M's shareholders for U.S. federal income tax purposes. At the completion of the transaction, Neogen will issue a number of shares to 3M shareholders such that 3M shareholders will receive approximately 50.1% of the combined company and existing Neogen shareholders will continue to own approximately 49.9% of the combined company. In connection with the transaction, 3M will also receive consideration valued at approximately $1 billion, subject to closing and other adjustments.

Neogen's expected pro forma net leverage ratio at close is expected to be less than 2.5x, inclusive of the $1 billion of new debt. Strong expected free cash flow generation and EBITDA growth of the combined business enables rapid deleveraging post-closing.

The transaction is expected to close by the end of Q3 2022, subject to approval by Neogen shareholders, receipt of required regulatory approvals and the satisfaction of other customary closing conditions.

**Leadership and Governance**

Neogen's President and Chief Executive Officer, John Adent, and Neogen's existing management team will continue to lead the combined company.

The size of the Neogen board will be increased and two new independent board members, to be designated by 3M, will be appointed at closing.

**The Materially Incomplete and Misleading Proxy Statement**

21.     On July 18, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Neogen stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Centerview; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning Neogen's Financial Projections and Centerview's Financial Analyses*

22.     The Proxy Statement fails to disclose material information concerning the financial projections for Neogen.

23.     For example, with respect to the Neogen management's financial projections for Neogen and the Food Safety Business, the Proxy Statement fails to disclose the line items underlying the calculation of: (i) EBITDA; (ii) Unlevered Net Income; and (ii) Unlevered Free Cash Flow.

24.     The Proxy Statement further fails to disclose a summary Neogen management's projected "cost savings and operating synergies" expected to result from the Proposed Transaction, which were furnished to Centerview for purposes of its analyses.  *See* Proxy Statement at 119.

25.     The Proxy Statement also fails to disclose material information concerning Centerview's financial analyses.

26.     With respect to Centerview's *Discounted Cash Flow Analysis* of Neogen and Garden SpinCo, the Proxy Statement fails to disclose a quantification of: (i) the terminal year projected EBITDA of each of Neogen and the Food Safety Business; (ii) the terminal values of each of Neogen and the Food Safety Business; (iii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%; and (iv) Neogen's and the Food Safety Business' respective net debt, minority interest and equity method investments, as applicable.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

27.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

28.     Specifically, the Proxy Statement fails to disclose the terms and timing of the non-binding proposals for a potential combination which Neogen management delivered to two other potential strategic counterparties during the 2020 to 2021 time period, as well as a summary of any negotiations or discussions thereof. *See id.* at 111-12.

29.     The Proxy Statement further fails to disclose the terms of any confidentiality agreements the Company entered into with any parties during the process leading up to the Proposed Transaction, including whether any confidentiality agreements contain a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding a party submitting a topping bid for the Company.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

30.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

31.     Specifically, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between 3M and Neogen concerning the agreement that Neogens's senior management will continue to lead the combined company, including who participated in all such communications, when they occurred and their content.

32.     In sum, the omission of the above-referenced information renders statements in the "Financial Projections," "Opinion of Neogen's Financial Advisor," "Interests of Certain Persons in the Transactions" and "Background of the Transactions" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Neogen will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Neogen**

33.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Neogen is liable as the issuer of these statements.

10

35.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Neogen within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Neogen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

11

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

45.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Neogen, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  July 22, 2022                                        **ACOCELLI LAW, PLLC**


                                        By   */s/ Richard A. Acocelli*
                                             Richard A. Acocelli
                                             33 Flying Point Road, Suite 131
                                             Southampton, NY 11968
                                             Tel: (631) 204-6187
                                             Email: racocelli@acocellilaw.com

                                             *Attorneys for Plaintiff*